IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**JOHNNY ULIBARRI,**

       Plaintiff,

vs.                                               Civ. No. 00-745 LH/DJS

**LARRY G. MASSANARI, Acting
Commissioner of Social Security,**[1]

       Defendant.


## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[2]

1.  Plaintiff invokes this Court's jurisdiction under 42 U.S.C. §405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner determined that Plaintiff is not eligible for disability insurance benefits. Plaintiff moves this Court for an order reversing the Commissioner's final decision or remanding this matter for a rehearing. The Court will review the Commissioner's

---

[1] Pursuant to Fed.R.Civ.P. 25, Larry G. Massanari, Acting Commissioner of Social Security is substituted for Kenneth S. Apfel, as the Defendant in this action. Mr. Massanari was designated by President Bush on March 29, 2001.

[2] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. Section 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections with the clerk of the district court within the ten day period allowed if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner applied correct legal standards in making his findings. <u>Williams v. Bowen</u>, 844 F.2d 748 (10th Cir. 1988).

**Administrative History**

    2.   Plaintiff filed for Social Security Disability Insurance benefits on April 22, 1996. Tr. 294. The application was denied initially and on reconsideration. Plaintiff requested and received a *de novo* review before an administrative law judge (ALJ). The ALJ found that Plaintiff was not disabled. Tr. 19. The Appeals Council denied Plaintiff's request for review. Tr. 5-6. The decision of the ALJ therefore became the final decision of the Commissioner for judicial review purposes.

        **Statement of the Facts**

    3.   Plaintiff alleges a disability since October 10, 1995, due to a back and neck injury, arm and should pain, headaches and depression. Tr. 70. Plaintiff was born on November 6, 1952 and was 43 years old on the date of the ALJ's decision. Tr. 28. Plaintiff has a high school education. Tr. 74. He has past relevant work experience as a lineman and supervisor. Tr. 85.

**Issues**

    4.   Plaintiff alleges that the ALJ erred in the following: 1) in finding that Plaintiff's subjective complaints were not credible; 2) in failing to adequately consider Plaintiff's

2

nonexertional limitations; 3) in finding that Plaintiff's mental impairments do not meet a listing; and 4) in finding that Plaintiff's nonexertional limitations restrict his ability to perform light work.

**The Standard of Review**

5.   The function of this Court on review is not to try the Plaintiff's claim *de novo*, but to determine upon the whole record whether the Commissioner's decision is supported by substantial evidence.  Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is more than a scintilla but less than a preponderance of the evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is such relevant evidence as reasonable minds might accept as adequate to support a conclusion.  Id.  It is well settled that if there is substantial evidence to support the Commissioner's decision then that decision must be upheld.  However, the district court should not blindly affirm the Commissioner's decision but must instead scrutinize the entire record to determine if the Plaintiff's claim is supported by substantial evidence and the law has been correctly applied.  Hogan v. Schweiker, 532 F.Supp. 639, 642 (D.Colo. 1982).

6.   The Plaintiff must first make a *prima facie* showing of an impairment which effectively precludes him from returning to his past work.  Once that showing is made, the burden shifts to the Commissioner to show:  (1) that the Plaintiff, considering his age,

education, work experience and physical shortcomings, has the capacity to perform alternative jobs and (2) that these specific types of jobs exist in significant numbers in the economy.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); Salas v. Califano, 612 F.2d 480, 482-83 (10th Cir. 1979); Gardner v. Brian, 369 F.2d 443, 446-47 (10th Cir. 1966).

    7.   To regularize the adjudicative process, the Social Security Administration promulgated regulations which establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §404.1520.  At the first three levels of the sequential evaluation process, the claimant must show: (1) that he is not engaged in substantial gainful employment;  (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; and (3) that his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant cannot show that he has met or equaled a listing, he must show at step four that he is unable to perform work he had done in the past.  At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering his age, education, and prior work experience.  If a determination of disability is found at any step, further inquiry is not required.  20 C.F.R. §404.1520.

    8.   Upon reaching the fifth step of the sequential evaluation

process, the Medical-Vocational Guidelines (grids) are used in determining whether disability exists. 20 C.F.R. Part 404, Subpt. P, App. 2.  These grids reflect the existence of jobs in the national economy at various residual functional levels by incorporating administrative notice of some occupational publications and studies.  20 C.F.R. §404.1566(d).  This aids the Commissioner in determining what specific job types exist in the national economy for the claimant.  To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and residual functional capacity.  20 C.F.R. §§404.1545, 404.1563-.1565.  These findings of fact are factored into the grids to produce a factual conclusion of disabled or not disabled.  20 C.F.R. §404.1569.  The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §200.00(e)(2).

9.   Where a claimant presents evidence of both exertional and nonexertional impairments (such as pain, inability to maintain concentration, and substance abuse), the grids are not conclusive but merely form a framework for disability determination. Id.  In that situation, the ALJ must make findings on how much a claimant's work ability is further diminished by the nonexertional limitations. Id.  If the claimant's nonexertional limitations are significant enough to reduce further his or her work capacity, the ALJ may not rely upon the grids but instead must give full consideration to all relevant facts, including vocational expert

5

testimony if necessary, in determining whether the claimant is disabled. Id.; Channel v. Heckler, 747 F.2d 577, 583 (10th Cir. 1984). However, the mere presence of nonexertional impairments does not automatically preclude reliance on the grids. Ray v. Bowen, 865 F.2d 222, 225 (10th Cir. 1989); Gossett v. Bowen, 862 F.2d 802, 807-08 (10th Cir. 1988); Channel, 747 F.2d at 582 n. 6.

**Discussion**

10.  Plaintiff failed to carry his burden in establishing that he has a disabling impairment. To qualify for benefits Plaintiff must demonstrate, in accordance with the relevant portion of Section 223(d) of the Act, 42 U.S.C. Sec. 423(d), that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for at least 12 months. 42 U.S.C. Sec. 416(1)(10). The Act defines a physical impairment or mental impairment as one "that results from anatomical, physiological or psychological abnormalities which are demonstrated by medically acceptable clinical or laboratory diagnostic techniques." 42 U.S.C. Sec. 423(d)(3). The Commissioners' regulations require claimants to support their allegations through medically acceptable clinical and diagnostic techniques. 30 C.F.R. Sec. 404.1513.

11.  The record shows that Plaintiff was injured on the job on October 10, 1995 when a small tree that he was cutting with a

chain saw fell and struck him on the top of his head. He was diagnosed with a cervical strain, a soft tissue injury. The X-rays and MRI showed no significant abnormalities. The ALJ correctly considered the objective medical evidence. 20 C.F.R. Sec. 404.1529(c). Specifically the ALJ wrote:

> On April 24, 1987, a cervical spine x-ray showed evidence of slight muscle spasm in an otherwise normal cervical spine. Cervical spine x-rays were again performed on October 15, 1991, which were normal. An MRI of the cervical spine was performed on November 20, 1995, which showed no significant abnormality of the cervical spine. Tr. 16-17.

12. The ALJ also considered and gave substantial weight to the opinion of Dr. James Dossey, M.D. Dr. Dossey treated the Plaintiff from December 22, 1995 to April 22, 1996. On the first visit Dr. Dossey diagnosed Plaintiff with a soft tissue injury of the neck. At this time he found that Plaintiff could perform light work. The only restriction Plaintiff placed on the Plaintiff at that time was to avoid lifting over 20 pounds and not to climb poles or turn his head frequently. Tr. 18. In January of 1996, Dr. Dossey examination revealed no evidence of muscle atrophy and again opined that Plaintiff could perform light work. Tr. 18. After seeing the Plaintiff on many occasions, Dr. Dossey continued to find that the Plaintiff was capable of performing light work. Tr. 19-20. Dr. Dossey's opinions are supported by his objective findings on physical examination. Dr. Dossey consistently found

that the Plaintiff had normal reflexes, only tenderness over the right trapezius muscles around the shoulder and slightly in the upper arm. Dr. Dossey did not find any trigger points. Plaintiff had a full range of motion in all joints. His strength was good. Tr. 25.

13.   Dr. Dossey's findings are consistent with those of Michael Baten, M.D., a neurologist. On December 12, 1995 Dr. Baten found that Plaintiff did not have any neurological problems with the exception of a slight indication of irritative radiculopathy. The Plaintiff saw Dr. Baten a year later on January 10, 1996. Dr. Baten found that Plaintiff's neurological status was unchanged. Further, Plaintiff's nerve conduction studies and electromyography were normal. Tr. 18.

14.   Plaintiff was evaluated by Fredrica E. Smith, M.D. on May 30, 1996 to determine if the Plaintiff had inflammatory connective tissue disease. Dr. Smith found that there was no evidence that Plaintiff had rheumatoid arthritis, systemic lupus erythematosus or connective tissue disease. Tr. 20.

15.   The record contains a contrary opinion by one of Plaintiff's treating physicians, Dr. Lindy Akes. Dr. Akes concluded that Plaintiff was permanently disabled. The ALJ specifically discounted this opinion. As the ALJ states, "Dr. Akes does not give any objective findings that would support a finding of disability, but only launches into an attack of the care and treatment that has been prescribed for the claimant." Tr. 25. Dr.

Ake's opinion was a conclusory opinion and was not consistent with the medical evidence. Puckett v. Chater, 100 F.3d 730, 733 n.2 (10th Cir. 1996)(diagnosis without medical findings are not sufficient); 20 C.F.R. Sec. 404.1525.

16. Plaintiff contends that his mental impairment satisfies Listing 12.04 "effective [sic] disorders." To qualify for benefits at step three the Plaintiff must show that he meets all of the Listing's specified medical criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). The record clearly demonstrates that the substantial evidence supports the ALJ's finding that the Plaintiff does not have a mental impairment and does not that meet the listing on affective disorders.

17. Plaintiff was evaluated on two occasions regarding his alleged mental impairment. Plaintiff was evaluated by Levon D. Tashjian, M.D., a psychiatrist on May 27, 1997. The ALJ noted the following from Dr. Tashjian's report: Plaintiff was alert, oriented and cooperative. The Plaintiff cried uncontrollably in the interview. Dr. Tashjian found no evidence of a thought disorder. He was diagnosed with a mood disorder related to his injury. Tr. 180. He found the plaintiff to be intelligent and articulate. His memory was intact. His current level of functioning is in the area of 30 or so. Tr. 181. This would indicate a low level of functioning.

18. The ALJ specifically discounted the opinion of Dr. Tashjian. In his opinion, the ALJ wrote that this evaluation and

conclusion was based on the Plaintiff's statements and the records of Dr. Akes. Tr. 26. Specifically, the ALJ correctly wrote that "[s]ince Dr. Tashjian's opinion was based on the assumption that the claimant was totally disabled by his physical limitations as specified by Dr. Akes, his opinion cannot be given substantial weight." Id. As neither of these are supported by the objective evidence, the opinion of Dr. Tashjian cannot be accorded with substantial weight.

    19. Plaintiff was evaluated by Gary Hachadourian, Ph.D. on June 9, 1997. Again, Plaintiff was found to have recurrent depression at a moderate level and occasionally at a severe level. Plaintiff told Dr. Hachadourian that the medications he took helped to lessen his depression. Tr. 23. Dr. Hachadourian found no signs of thought disorder. His capacity to "attend and to concentrate appears to be normal." Tr. 183. His memory was normal Insight was fair and judgment was fair to good. Dr. Hachadourian concluded that if Plaintiff were "able to work, physically, there is no doubt but that he has the social awareness and cooperativeness to get along in the job market." Id. Plaintiff tested at a ful Scale I.Q. of 80.

    20. The evidence in the record clearly shows that the Plaintiff does not meet the "B" criteria of listing 12.04. The record shows that the Plaintiff admits to performing numerous daily activities including exercising, cooking, doing yard work, reading, watching television, driving, visiting with friends and relatives,

taking out the trash and vacuuming. Tr. 99-102, 201, 240, 243, 245. In completing the Psychiatric Review Technique (PRT) form, the ALJ properly found that the Plaintiff had only slight limitations in activities of daily living. Tr. 32.

21.   The ALJ found that the Plaintiff had only slight limitations in maintaining social functioning. Tr. 32. Plaintiff asserts that Dr. Hackadourdian found that he had marked difficulty in that area. A review of Dr. Hackadourian's report shows otherwise. Dr. Hackadourian reported that "there is no doubt that he has the social awareness and cooperativeness to get along in the job market." Tr. 184 and 185. He recommended that the Plaintiff be retrained and perhaps educated for another job. Tr. 184.

22.   Further, Dr. Hackadourian found that though Plaintiff had "deficiencies of concentration, his "concentration appear[ed] normal." Tr. 183. He further noted in his report that Plaintiff had "unlimited/very good" ability to maintain concentration. Tr. 185.

23.   The fourth criteria under B is whether Plaintiff every decompensated or deteriorated in a work setting. There is no evidence of such. Clearly, the Plaintiff did not satisfy all of the criteria of Listing 12.04.

24.   Plaintiff also argues that the ALJ failed to properly analyze Plaintiff's subjective complaints of pain. Again, a review of the decision clearly shows that the ALJ analyzed Plaintiff's subjective complaints as required in Luna v. Bowen, 843 F.2d 161

(10th Cir. 1987) and SSR 96-7p.  The ALJ specifically found that Plaintiff had a pain producing impairment and there was a nexus between the pain he suffered and his cervical strain.  The ALJ further considered whether the pain was so severe that it precluded any gainful employment.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990).  In this analysis, the ALJ specifically discussed Plaintiff's daily activities as discussed above.

25. Further, as discussed, supra, the ALJ properly considered that Plaintiff's treating physicians opined in numerous reports that Plaintiff could return to light work.  Tr. 113-14, 115-16, 117, 120, 121, 123-24, 127.  The ALJ properly relied on these opinions .  See Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)(findings of a treating physician provide substantial evidence to support the ALJ's decision).

26. The ALJ set forth specific reasons underlying his credibility determination and because the substantial evidence in the record supports these reasons the ALJ's credibility determination should not be disturbed.  See Kepler v. Chater, 68 F.3d 387, 392 (10th Cir. 1995).

27. The ALJ correctly applied the grids.  The ALJ addressed all of Plaintiff's non-exertional limitations. The ALJ found that Plaintiff had pain, depression and headaches.  However, these do not "significantly compromise his ability to perform a full range of light work."  Tr. 27.  As discussed above, this was based on the ALJ's credibility finding, the objective medical evidence and the

treating physicians' opinions. Substantial evidence supports his decision.

## Recommended Disposition

For these reasons, I recommend that Plaintiff's Motion to Remand be denied.

_____
Don J. Svet
**UNITED STATES MAGISTRATE JUDGE**